**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 19 C 50199 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| SEAL-RITE DOOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff Danin Thomas, an African American man, filed this lawsuit against Defendant

Seal-Rite Door, Inc ("Seal-Rite") after Seal-Rite terminated his employment on December 12,

2018. Thomas brings claims for racial discrimination in violation of Title VII of the Civil Rights

Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; hostile work environment in violation of

Title VII; and retaliation for the exercise of his rights in violation of Title VII. Seal-Rite moves

to dismiss Thomas' complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court

finds that Thomas cannot pursue any claims based on conduct that occurred over 300 days before

he filed his second EEOC charge or that arise from allegations included in his first EEOC

charge. Because Thomas has not alleged any conduct related to his hostile work environment

claim that occurred within this 300-day period, the Court dismisses that claim. But because

Thomas has sufficiently alleged timely racial discrimination and retaliation claims, the Court

allows these claims to proceed to discovery.

# BACKGROUND[1]

Thomas worked for Seal-Rite, an asphalt maintenance services business, as a prefinish technician from September 19, 2016 to December 12, 2018. During his employment, Thomas observed management make derogatory statements to him and other employees of similar ethnicity. Specifically, on or about August 4, 2017, Seal-Rite's General Manager, Scott Glass, approached Thomas and asked him, "How do you people get your hair like that?" Doc. 1 ¶ 12. Another Seal-Rite employee, Bruce Landenburg, heard the comment and told Glass he could not make such statements because they violate Human Resources protocol. Glass responded, "Yeah, but he knows what I'm talking about." *Id.* ¶ 13. Several days later, on August 8, 2017, Thomas overheard Glass tell another employee, Khalid Pryor, that "he would not hire [African-American] women because they are too ghetto and loud." *Id.* ¶ 14. Thomas chose not to confront Glass about his comments and instead contacted Seal-Rite's Vice President, Shawn Richard, via email to request that Seal-Rite conduct a formal Human Resources investigation. Thomas believes that Seal-Rite did not conduct a Human Resources investigation into Glass' comments.

On August 9, 2017, Glass instructed all Seal-Rite employees to carry identification to assist Seal-Rite in facilitating mandatory random drug testing. One employee, Alex, informed

---

[1] The facts in the background section are taken from Thomas' complaint and the exhibits attached thereto and are presumed true for the purpose of resolving Seal-Rite's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). A court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment. *Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). Where a document is referenced in the complaint and central to Thomas' claims, however, the Court may consider it in ruling on the motion to dismiss. *Id.* Thomas did not attach his 2017 EEOC charge to the complaint, which Seal-Rite submitted as an exhibit to the motion to dismiss. The Court takes this charge into account because it must consider the allegations in the charges to determine the timeliness and proper scope of Thomas' claims and because Thomas discusses the 2017 EEOC charge in his complaint. *See Davis v. Central Can Co.*, No. 05 C 1563, 2006 WL 2255895, at *4 (N.D. Ill. Aug. 4, 2006) (collecting cases).

Glass that he only had identification from Mexico, to which Glass responded, "Yeah, you're probably illegal." *Id.* ¶ 17. Alex and multiple other employees told Glass he could not make such comments. Thomas also approached Glass and requested that he stop making racially discriminatory statements. Glass became defensive and denied his actions, but he later agreed not to make such statements again. That same day, Thomas requested that his immediate supervisor, Nick Vyborni, schedule a meeting with Seal-Rite managers to discuss Glass' derogatory statements. Vyborni acknowledged the request and scheduled a meeting. Although Thomas thought he requested a formal Human Resources investigation, again, no Human Resources charge came out of the request. Thomas also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") that day (the "2017 EEOC charge"). In the 2017 EEOC charge, Thomas claimed racial discrimination and retaliation based on management's continued discriminatory comments and threats to his employment after he complained of discrimination. The EEOC issued Thomas a right to sue letter with respect to his 2017 EEOC charge on December 15, 2017.

On October 9, 2017, Seal-Rite supervisor John Utley approached Thomas to discuss the status of the 2017 EEOC charge. Thomas requested that Utley not ask him about the ongoing racial discrimination claims, to which Utley responded, "Yeah that's right, you just keep pushing that broom n****r." *Id.* ¶ 23. Thomas reported Utley's comments to Vyborni and Richard. Richard questioned Utley, who admitted he made the comments. Utley received a warning from Seal-Rite without any formal suspension. On or about October 23, 2017, Thomas expressed frustration to Richard that Utley had only received a warning, but Richard indicated that Seal-Rite had no plans to escalate the warning. Thomas considered this an acknowledgment that Seal-Rite had concluded its investigation into his allegations of racial discrimination and would

not take any additional steps to prevent a hostile work environment or retaliation. As a result, from October 23, 2017 through January 22, 2018, Thomas actively avoided unnecessary interactions with coworkers and supervisors.

On January 22, 2018, Thomas slipped on an oil leak while at work and injured his right shoulder. After Thomas notified Vyborni about the accident, an ambulance took Thomas to the emergency room. Thomas met with a physician at Swedish American Hospital who ordered him not to lift more than twenty pounds. Thomas told Vyborni he needed to take medical leave because of the injury and provided him with medical documentation. Vyborni informed Thomas that Seal-Rite would provide 120 days of paid leave, which Thomas understood to also include Seal-Rite's assistance in filing for Family Medical Leave Act ("FMLA") benefits.

From January 22, 2018 through May 30, 2018, Thomas recuperated at home, believing that Seal-Rite was processing his FMLA paperwork. However, on May 30, 2018, Seal-Rite's Human Resources representative, Nate Reynolds, informed Thomas that his FMLA documentation had not been filed and that he needed to return to work to avoid termination. That same day, Thomas updated Vyborni about his shoulder injury and the doctor's restriction that he not lift more than twenty pounds. Vyborni stated that Seal-Rite could accommodate this restriction and that Thomas should return to work on June 1, 2018.

Nonetheless, upon Thomas' return, Vyborni immediately instructed him to begin lifting nearly 200 pounds of concrete and composite doors in the most physically demanding position at Seal-Rite. Thomas complied with the instruction against the orders of his physician, which further exacerbated his injury. But he did not immediately complain to his supervisors or Human Resources because he feared further disciplinary action or losing his position.

4

On or about June 15, 2018, Thomas learned from a co-worker, Jonathan Diaz, that, upon Diaz's hiring, management warned him to "stay clear" of Thomas because Thomas was a "trouble maker." *Id.* ¶ 35. A few days later, Diaz received a warning after management observed him speaking with Thomas.

Around June 25, 2018, Thomas received documentation indicating that Seal-Rite supervisor John McCalister was a registered sex offender. Thomas reported this information to Vyborni. Vyborni told Thomas not to discuss the issue and informed McCalister of Thomas' report. McCalister subsequently began issuing Thomas disciplinary actions. Specifically, Thomas received written discipline from McCalister on June 30, 2018, for not promptly returning to work within one minute after the warehouse alarm signaled the end of a break period. McCalister also issued Thomas written discipline on July 15, 2018, claiming Thomas returned from Seal-Rite's break room without authorization. McCalister further issued Thomas written discipline on August 1, 2018, claiming Thomas did not punch out for his scheduled lunch break. Finally, McCalister issued Thomas written discipline on August 15, 2018, claiming Thomas took an unauthorized break. Thomas had not received any other disciplinary actions or negative performance reviews during his time at Seal-Rite.

On or about December 11, 2018, Thomas was accused of assaulting Vyborni by shooting an industrial strength staple gun at him. Management called Thomas into its office and informed him of his termination as a result of the accusation. Thomas filed for unemployment upon his termination, which Seal-Rite contested and won. Thomas then appealed the unemployment claim to the Illinois Department of Employment Security based upon a security recording of the incident. Thomas later obtained unemployment benefits.

Thomas filed a charge with the Illinois Department of Human Rights, cross-filed with the EEOC, on March 11, 2019 (the "2019 EEOC charge"). In the 2019 EEOC charge, Thomas alleged that Seal-Rite discriminated against him based on his race and retaliated against him for engaging in protected activity. The EEOC issued a right to sue letter with respect to the 2019 EEOC charge on March 21, 2019.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Timeliness of Claims

First, the Court addresses Seal-Rite's argument that certain of Thomas' claims are time-barred. Specifically, Seal-Rite argues that Thomas cannot base his claims on any alleged discriminatory or retaliatory conduct predating September 12, 2018, 180 days before he filed the 2019 EEOC charge. Additionally, Seal-Rite contends that because Thomas did not file suit within ninety days of receiving the December 15, 2017 right to sue letter with respect to his 2017

EEOC charge, he cannot pursue claims based on conduct included in that charge. Thomas fails to meaningfully respond to Seal-Rite's arguments, only asserting, without any legal support, that he did not file suit after receiving the right to sue letter regarding the 2017 EEOC charge because he feared retaliation in the form of workplace harassment and termination. The Court nonetheless examines Seal-Rite's two timeliness arguments.

### A.      300-Day Time Limit for EEOC Charge

First, Seal-Rite argues that the Court should not consider any conduct arising more than 180 days before Thomas filed his 2019 EEOC charge, which, according to Seal-Rite, means that he can only proceed on his claims with respect to his termination. In a deferral state, like Illinois, however, a plaintiff has a 300-day window to file an EEOC charge concerning an alleged unlawful employment practice for a Title VII claim based on those practices to be actionable. *Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir. 2014) ("If a plaintiff does not file a charge concerning a discrete act within the 300-day window, her claim is time-barred and she may not recover."); *Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 460 (7th Cir. 2007) ("A charge of employment discrimination must be filed with EEOC within 300 days of the alleged unlawful employment practice."). Retaliation and discrimination claims depend on discrete acts, with each adverse employment action starting a new filing clock. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Given that Thomas filed his 2019 EEOC charge on March 11, 2019, he may only recover for discrete alleged unlawful employment practices occurring after May 15, 2018, rather than September 12, 2018. His termination undoubtedly fits within this window. To the extent Thomas also contends that the discipline he received from McCalister between June 30, 2018 and August 15, 2018 amounted to retaliation, these actions also fall within the 300-day window.

But the Court cannot find that Thomas complied with the 300-day filing requirement with respect to his hostile work environment claim. For hostile work environment claims, the Court may consider the entirety of an employer's behavior to assess the plausibility of the claims as long as one contributing act took place within the statutory period. *Id.* at 105, 115–17 ("A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.' . . . Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." (citation omitted)). While Thomas' 2019 EEOC charge makes a vague reference to harassment, that charge and his complaint do not include any suggestion that he experienced race-based harassment after May 15, 2018. He cannot use his termination or the imposition of discipline between June and August 2018 as contributing acts to his hostile work environment claim; his termination and discipline are instead discrete adverse employment actions. *See Novotny v. Plexus Corp.*, No. 13-cv-05881, 2017 WL 1093161, at *6 (N.D. Ill. Mar. 23, 2017) (the plaintiff's termination did not contribute to hostile work environment claim so as to make it timely); *Wallin v. THC-Chicago, Inc.*, 2004 WL 2535283, at *7 (N.D. Ill. Sept. 23, 2004) ("[H]er firing was not an act creating a hostile environment but was (allegedly) an example of disparate treatment between her and the male doctor. It therefore is not part of the same hostile environment claim."). And Thomas does not include allegations to allow for the inference that his race contributed to Seal-Rite's treatment of his injury or the warnings it gave his coworkers about his troublemaker status so as to allow these actions to act as the hook to make his hostile work environment claim timely. Indeed, Thomas' response to Seal-Rite's argument only highlights the 2017 discriminatory comments, suggesting that he cannot point to an act falling within the statutory time period that

would make his hostile work environment claim timely. Therefore, the Court finds that Thomas cannot proceed on his hostile work environment claim based on the current allegations of the complaint.[2] Thomas can, however, use any time-barred allegations as background evidence in support of his timely-filed retaliatory and discriminatory termination claims. *Morgan*, 536 U.S. at 113 (Title VII does not "bar an employee from using the prior acts as background evidence in support of a timely claim."); *Malin v. Hospira, Inc.*, 762 F.3d 552, 561 (7th Cir. 2014) (events that occurred 300 days before the plaintiff submitted her EEOC charge could be used as circumstantial evidence of retaliation).

### B.     Ninety-Day Right to Sue Time Limit

The Court also addresses Seal-Rite's alternative argument that Thomas' failure to file suit within ninety days of receiving a right to sue letter with respect to his 2017 EEOC charge bars him from pursuing any claims based on conduct raised in that charge. A Title VII plaintiff "may bring only those claims that were included in her EEOC charge, or that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Geldon v. S. Milwaukee Sch. Dist.*, 414 F.3d 817, 819 (7th Cir. 2005) (quoting *McKenzie v. Ill. Dep't of Transp.*, 92 F.3d 473, 481 (7th Cir. 1996)). A plaintiff has ninety days from receipt of a right to sue letter from the EEOC to file a Title VII lawsuit. *Houston v. Sidley & Austin*, 185 F.3d 837, 838–39 (7th Cir. 1999) ("Under . . . Title VII, a plaintiff must file her suit within 90 days from the date the EEOC gives notice of the right to sue."). When a plaintiff files multiple complaints with the EEOC, he generally cannot reallege discriminatory acts from an earlier EEOC charge to evade compliance with the ninety-day period for filing a complaint. *Freeman v. Travelers Cos.*, 63 F. Supp. 3d 867, 872 (N.D. Ill. 2014) ("To allow a plaintiff to re-allege an earlier EEOC

---

[2] Because the Court finds that Thomas has not alleged a timely hostile work environment claim, it does not address Seal-Rite's argument that the complaint does not sufficiently state such a claim.

charge in a subsequent EEOC charge would render the 90-day time limit for filing lawsuits meaningless, because it would allow the plaintiff to evade [the filing requirement] simply by seeking additional Notices of Right to Sue whenever he pleased." (alteration in original) (quoting *Vitello v. Liturgy Training Publ'ns*, 932 F. Supp. 1093, 1098 (N.D. Ill. 1996))); *Johnson v. Chicago Bd. of Educ.*, No. 05 C 4294, 2007 WL 317030, at *5 (N.D. Ill. Jan. 31, 2007) ("[O]nce the 90-day period expires, a court is precluded from adjudicating any allegations contained in a previous charge.").

Thomas does not dispute that he did not file suit within ninety days of receiving the right to sue letter related to the 2017 EEOC charge. He instead argues that he did not do so because he feared further retaliation. Under certain circumstances, equitable tolling or equitable estoppel may allow a plaintiff to proceed on a time-barred claim. *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chicago Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999). Equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990). Equitable tolling plays no role here given that Thomas had the information needed when he filed the 2017 EEOC charge. "The doctrine of equitable estoppel, when invoked as a defense to the statute of limitations, requires the plaintiff to show that the defendant took steps deliberately to prevent the plaintiff from bringing a timely suit, whether by concealing the existence of the plaintiff's claim or by promising not to plead the statute of limitations." *Beckel v. Wal-Mart Assocs., Inc.*, 301 F.3d 621, 622 (7th Cir. 2002). The Seventh Circuit has refused to recognize fear of retaliation as grounds for equitable estoppel. *See id.* at 624 ("[A] threat to retaliate is not a basis for equitable estoppel."). Accordingly, Thomas'

failure to file suit within ninety days of receiving the right to sue letter with respect to his 2017 EEOC charge also precludes him from proceeding on any allegations raised in that charge.

## II.     Racial Discrimination Claim (Count I)

Turning to the sufficiency of Thomas' allegations, Seal-Rite argues that Thomas has not sufficiently pleaded facts in his complaint to sustain a plausible inference of a racially discriminatory motive behind his termination. However, Seal-Rite requests too much from Thomas at the pleading stage; "[e]mployers are familiar with discrimination claims and know how to investigate them, so little information is required to put the employer on notice of these claims." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014).

At this stage, Thomas must only allege that "the employer instituted a (specific) adverse employment action against [him] on the basis of" his race. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Thomas has alleged just this—that Seal-Rite terminated him because of his race. *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 781 (7th Cir. 2007) (in emphasizing the simplicity required in pleading a racial discrimination claim, citing with approval an allegation that "I was turned down for a job because of my race" (quoting *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998))). Seal-Rite argues that Thomas has nonetheless pleaded himself out of court by relying on remote and isolated comments. *See Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 605 (7th Cir. 2012) ("[I]solated comments are not probative of discrimination unless they are 'contemporaneous with the discharge or causally related to the discharge decision-making process.'" (quoting *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1140 (7th Cir. 1997))). But the length of time between such comments and Thomas' termination does not provide a basis for dismissal at the pleading stage and instead remains a

question for discovery and summary judgment.[3] *See Carlson*, 758 F.3d at 827 (a plaintiff can satisfy the pleading requirements for a discrimination claim by alleging the adverse action and attributing that action to discrimination based on a protected characteristic, with nothing more required). Therefore, the Court allows Thomas to proceed on his racial discrimination claim with respect to his termination.

### III.    Retaliation Claim (Count III)

At the pleading stage, a Title VII retaliation claim requires only that the plaintiff "allege that she engaged in a statutorily protected activity and was subjected to adverse employment action as a result." *Carlson*, 758 F.3d at 828 (quoting *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1029 (7th Cir. 2013)). Similar to its argument with respect to the discrimination claim, Seal-Rite argues that Thomas failed to sufficiently plead a causal connection between the alleged protected activity and his termination to support his retaliation claim.[4]

Thomas alleges he engaged in protected activities when, among other things, he filed an EEOC charge on September 6, 2017, he reported his conversation with Utley on October 9, 2017, and he reported McCalister's sex offender status.[5] *See Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013) ("An employee engages in a protected activity by either: (1) filing a charge, testifying, assisting or participating in any manner in an investigation,

---

[3] Indeed, the cases on which Seal-Rite relies to argue that isolated comments do not suffice to establish causation were decided at the summary judgment phase.

[4] Thomas also clarifies in his response that his retaliation claim encompasses the disciplinary actions McCalister imposed on him between June and August 2018. Although Seal-Rite did not address this aspect of Thomas' claim, the Court finds the complaint sufficiently provides notice of such a theory. *See Hatmaker v. Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010).

[5] The Court questions whether Thomas' report of McCalister's sex offender status qualifies as protected activity, but because Seal-Rite did not challenge the sufficiency of Thomas' allegations of a protected activity until its reply brief, the Court does not find it necessary to address the issue here. *See Dexia Crédit Local v. Rogan*, 629 F.3d 612, 625 (7th Cir. 2010) ("[A]rguments raised for the first time in a reply brief are waived.").

proceeding or hearing under Title VII . . . or (2) opposing an unlawful employment practice."). Thomas has also pleaded that he suffered adverse actions when McCalister imposed discipline on him and Seal-Rite terminated him on December 12, 2018. *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (for retaliation purposes, an action is materially adverse if it would have "dissuaded a reasonable worker from making or supporting a charge of discrimination" (citation omitted)); *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015) ("A termination is of course a materially adverse employment action.").

Reprising its argument concerning Thomas' discrimination claim, Seal-Rite argues that the length of time between the protected activity and Thomas' termination is too attenuated to sustain a plausible claim of retaliation. But the Seventh Circuit has cautioned against drawing any "bright-line timing rule . . . to decide whether a retaliation claim is plausible," *Carlson*, 758 F.3d at 829, allowing a plaintiff to rely on "other circumstantial evidence to support her claim" when the causal connection between the protected activity and adverse employment action is weak, *Malin*, 762 F.3d at 560. Seal-Rite's argument about the timing of Thomas' termination goes to the "strength of [his] case" but does not require dismissal. *See Stark v. Foxx*, No. 14-cv-148-jdp, 2015 WL 1321587, at *4–5 (W.D. Wis. Mar. 24, 2015) (allowing complaint to proceed despite four-year time interval between protected activity and adverse employment action, noting that defendant's arguments went to the "strength" of the plaintiff's case). Drawing all reasonable inferences in Thomas' favor at this stage, he has sufficiently pleaded a retaliation claim by alleging his protected activity caused his termination. He also has sufficiently pleaded that his complaint about McCalister's sex offender status prompted McCalister to impose various disciplinary actions on him, which began shortly after McCalister learned of Thomas' report. Therefore, Thomas may proceed to discovery on his retaliation claims.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Seal-Rite's motion to dismiss [15]. The Court dismisses the hostile work environment claim (Count III) without prejudice.

Dated: September 30, 2020

SARA L. ELLIS
United States District Judge